## APPEAL OF T. C. POWER & BROTHER.

Docket No. 3740.   Promulgated April 14, 1927.

1. Cost and sale price for determination of gain or loss found.
2. Deduction for bad debts denied.

*James A. Walsh, Esq.*, for the petitioner.
*R. P. Smith, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency of $5,773.99 in income and profits taxes for 1919. There are two questions—(1) the amount of gain realized on the sale of shares of stock of another corporation owned by the petitioner, and (2) whether the petitioner is entitled to deduct certain alleged losses as bad debts.

FINDINGS OF FACT.

The petitioner is a corporation of the State of Montana with its pricipal office at Helena.

In 1919, it owned 2,000 shares of preferred stock and 424 shares of common stock of the Montana Oil Co., each of the par value of $100 per share. The number of shares outstanding was 2,000 preferred and 1,000 common. On July 8, 1919, the holders of all the stock of the Montana Oil Co. made the following contract:

THIS AGREEMENT made and entered into and executed in triplicate this eighth day of July, 1919, by and between T. C. Power and Brother, a corporation, T. C. Power, C. B. Power, J. M. Power, T. L. Martin, E. A. Wyatt, M. C. Henderson and F. E. Hirsch, being all of the stockholders of the Montana Oil Company, a corporation organized and existing under the laws of the State

of Montana, parties of the first part, and Edward T. Clark of Billings, Montana, party of the second part, WITNESSETH:

THAT, WHEREAS the Montana Oil Company is engaged in the business of dealing in petroleum products and has at various places in Montana branch establishments supplying the trade with said petroleum products, also oil tanks, warehouses and I. C. C. No. 5, gasoline shipping barrels, automobiles, trucks, office equipment, leases, options, and real estate, standing in the name of Montana Oil Company, and also the distributing and compounding plant at Kansas City, Missouri, located on land which the said Montana Oil Company has an option to purchase, and all equipment connected therewith, as appears on the books of said company on this day, and;

WHEREAS the party of the second part is desirous of purchasing and acquiring all of said property and to acquire all of the stock issued and outstanding and owned by the parties of the first part herein, amounting to three thousand shares of the stock of said company of the par value of One Hundred ($100.00) Dollars each.

Now THEREFORE, for and in consideration of the sum of One ($1.00) Dollar to them in hand paid and other valuable consideration, the receipt whereof is hereby acknowledged, the parties of the first part agree to endorse in blank the certificate of stock owned by them and each of them and deposit the same in escrow in the American National Bank at Helena, Montana, on this date, with instructions to said bank to deliver the same to the party of the second part upon payment, on November 1st, of the amount hereinafter designated, and upon which payment the said bank shall deliver the stock to the party of the second part herein.

It is further agreed that the parties of the first part shall, at the same time, deposit in escrow in said bank the resignations of all the Directors of said company and the officials of the same. It is understood and agreed that before the stock of said corporation shall be delivered to the said party of the second part that the said Montana Oil Company shall assign to J. M. Power as Trustee for the other parties of the first part herein named, all accounts receivable, bills receivable and other securities, if any then owned by the said Montana Oil Company, it being the intention that the said Montana Oil Company, when controlled by the party of the second part, shall not be the owner of the accounts receivable and bills receivable and other securities above mentioned when the stock is transferred and delivered.

And the parties of the first part hereto further agree that they will pay all claims and accounts against the Montana Oil Company due on the first day of November, 1919, all of which shall be paid on or before the first day of January, 1920. It is further understood and agreed that the party of the second part shall pay to the parties of the first part herein the cost price of all merchandise on hand on the first day of November, 1919, which cost price and the value of merchandise on hand shall be determined by an inventory to be taken on or about that date; said merchandise consisting of such goods, wares and merchandise as is shown on the books of said company, to be carried as merchandise, including stationery and advertising matter.

All oil tanks, warehouses and I. C. C. No. 5, gasoline shipping barrels, automobiles, trucks, office equipment, leases, options and real estate now standing in the name of the Montana Oil Company and the distributing and compounding plant at Kansas City, Missouri, located on land which said Montana Oil Company has an option to purchase, and all equipment connected therewith now owned and in the control of the said company, shall pass and remain the property of said company.

It is further agreed that when the inventory of said merchandise is taken, the party of the second part shall immediately pay to T. C. Power, as Trustee for the parties of the first part, the value of said merchandise, as shown by said inventory, at cost price as disclosed by the records and inventory, it being further agreed that if the said inventory is not completed on the first day of November, 1919 and at the time the party of the second part obtains possession of the said certificates of stock and of the property and affairs of the said Montana Oil Company that he shall, before being given possession of the said merchandise, either personally or as an officer of the Montana Oil Company, give the parties of the first part satisfactory security guaranteeing the payment of the amount due for said merchandise.

It is further agreed that the party of the second part shall and he does hereby agree to assume and fulfill and carry out the contracts made by the Montana Oil Company, excepting that certain contract dated July 6, 1914 between T. C. Power, C. B. Power, T. L. Martin, J. M. Power and E. A. Wyatt and M. C. Henderson, modified by a certain supplementary contract dated February 15, 1919, and accepted by the Montana Oil Company, and a certain contract dated January 23, 1918, between the respective parties heretofore named.

It is understood and agreed by the parties hereto that during the life time of this agreement the parties of the first part shall incur no contracts or obligations on behalf of the Montana Oil Company which shall run beyond November 1, 1919 and will not incur any additional expense or contracts for equipment save for replacement during this period.

It is understood and agreed that on the first day of November, 1919, the party of the second part shall deposit in the American National Bank at Helena, Montana, the sum of Two Hundred Seventy-five Thousand ($275,000.00) Dollars, in full payment of the stock owned by the parties of the first part and deposited in said bank in escrow under the terms of this agreement. In the event that the party of the second part fails to deposit said sum of money on or before November 1st, 1919, then all payments made to the parties of the first part shall be forfeited and the stock held in escrow returned to the parties of the first part herein.

It is further understood and agreed that the parties of the first part shall pay two thirds of the State, County and City taxes for the year 1919 and the party of the second part shall pay one third of said taxes.

It is further understood and agreed that the parties of the first part shall pay that portion of the income tax which the records of the company disclose is earned up to November 1st, 1919 and any back income tax assessed against the company and collected by the United States Government.

IN WITNESS WHEREOF, the said parties hereto have executed this instrument the day and year first above written.

|  |  |
|---|---|
|  | T. C. POWER & BRO. |
| By (Signed) | T. C. POWER |
| (Signed) | T. C. POWER |
| (Signed) | C. B. POWER |
| (Signed) | J. M. POWER |
| (Signed) | T. L. MARTIN |
| (Signed) | E. A. WYATT |
| (Signed) | M. C. HENDERSON |
| (Signed) | F. E. HIRSCH |
| (Signed) | EDWARD T. CLARK |

In the presence of
(Signed)　　A. NIXON
(Signed)　　W. C. EDWARDS

On the same day certificates representing all of the stock, and resignations of directors and officials of the Montana Oil Co. were delivered to the American National Bank of Helena in escrow.

Clark assigned his rights under the contract to the Mutual Oil Co. On August 19, 1919, the latter and the stockholders in the Montana Oil Co. entered into an agreement modifying the one set out above, the complete text of which follows:

THIS AGREEMENT, made and entered into and executed in triplicate this 19th day of August, 1919, by and between T. C. Power & Brother, a corporation, T C. Power, C. B. Power, J. M. Power, T. L. Martin, E. A. Wyatt, M. C. Hender son and F. E. Hirsch, parties of the first part, and Mutual Oil Company, or· ganized and existing under and by virtue of the laws of Arizona whose principal office is at Kansas City, Mo., party of the second part, WITNESSETH:

THAT WHEREAS, the parties of the first part on the 8th day of July, 1919, entered into an agreement to sell to the party of the second part three thousand (3,000) shares of the capital stock of the Montana Oil Company, which said stock is now held in escrow in the hands of the American National Bank at Helena, Montana, to be delivered to the party of the second part in accordance with the terms of the agreement aforesaid, which said agreement provides, among other things, that payment therefor shall be made on November 1st, 1919.

AND WHEREAS the party of the second part is desirous of obtaining said stock and the ownership of the Montana Oil Company on September 1st, 1919 instead of November 1st, 1919.

Now THEREFORE, for and in consideration of the sum of Seventeen thousand five hundred ($17,500.00) dollars and other valuable considerations, the receipt whereof is hereby acknowledged, the parties of the first part hereto do agree that the terms of the agreement of the 8th day of July, 1919, shall be amended, and are hereby so amended, to provide for the purchase of the stock on the first day of September, 1919, and that the payment of Two Hundred and Seventy-five Thousand Dollars ($275,000.00) provided in the agreement of the 8th day of July, 1919, to be made on the first day of November, 1919, shall be made on the first day of September, 1919, to the escrowee named in the aforesaid agreement, who shall hold said stock until the cost of all merchandise on hand on the first day of September, 1919, to be determined as is set forth in the agreement of July 8th, 1919, has been paid to T. C. Power, Trustee, and with reference to the payment of said merchandise, it is further definitely agreed that One hundred Thousand ($100,000.00) Dollars shall be paid on account on or before September 15, 1919, and another One hundred Thousand ($100,000.00) Dollars on account on or before October 1, 1919, and the balance remaining due for said merchandise to be paid in full on or before the first day of November, 1919.

And it is further definitely understood and agreed that the said stock shall continue to remain in escrow until said final payment is made and settlement arrived at in full, at which time the said T. C. Power, Trustee, to whom said monies shall be paid, shall notify the escrowee that said payments have been made and settlement arrived at and authorize him to release the said stock to said second party, it being understood and agreed that the management, control and ownership of Montana Oil Company shall vest in the party of the second part on September first, 1919, upon his payment to the escrowee of the sum designated, viz., Two Hundred Seventy-five Thousand Dollars ($275,000.00).

IT IS FURTHER understood and agreed that the parties of the first part are obligated to pay one-half of the State, County and City taxes and Corporation License for the year 1919, and that portion of the income tax which the records of the Company disclose is earned up to September first, 1919, and any back income tax assessed against the Company and collected by the United States Government, and the party of the second part shall pay the balance of said Taxes and Income Tax and License.

IT IS UNDERSTOOD AND AGREED by and between the parties hereto that this agreement is supplemental to that of July 8, 1919, only in so far as relates to the time of conveyance of the stock of Montana Oil Company and the obligations mutually agreed upon to be performed on or dated from November 1, 1919, which are now designated to be performed on and dated from September 1st, 1919, and that in all other respects the agreement of July 8, 1919, shall be in full force and effect and binding upon the parties hereto.

IN WITNESS WHEREOF, the said parties hereto have executed this instrument the day and year first above written.

|  |  | T. C. POWER & BRO. INC. |
|---|---|---|
| By | (Signed) | T. C. POWER, Pres. |
|  | (Signed) | T. C. POWER |
|  | (Signed) | C. B. POWER |
|  | (Signed) | J. M. POWER |
|  | (Signed) | T. L. MARTIN |
|  | (Signed) | E. A. WYATT |
|  | (Signed) | M. C. HENDERSON |
|  | (Signed) | FRANK E. HIRSCH |
|  |  | MUTUAL OIL CO. |
|  | (Signed) | O. H. WILLIAMS |
|  |  | President. |

In the presence of:
    (Signed) J. L. WALSH

Upon the execution of the first contract, Clark paid to the stockholders of the Montana Oil Co. $25,000. On or about September 1, 1919, the Mutual Oil Co. paid to the escrowee the sum of $275,000, which was by the contracts provided to be paid. It also made payments based on the cost price of the merchandise in inventory to J. M. Power, acting for the stockholders, as follows: September 15, 1919, $100,000; October 2, 1919, $100,000; November 7, 1919, $100,000. The cost price of the merchandise as of August 30, 1919, was ascertained to be $321,534.05. The balance of such cost price was paid subsequent to November 7, 1919, the final payments amounting to $3,000 and $325 being made in January, 1920. The stockholders paid all of the outstanding claims and accounts against the Montana Oil Co. shown by a trial balance taken August 31, 1919.

The American National Bank delivered the certificates of stock to the purchaser on or about February 20, 1920, in compliance with instructions of J. M. Power.

On January 6, 1920, an assignment was made by the Montana Oil Co. to J. M. Power, as trustee for the stockholders, of all its accounts receivable and bills receivable. A trial balance sheet for

the trustee prepared by an examining revenue agent shows that the face value of the accounts receivable and the bills receivable as of December 31, 1919, was $84,849. Distributions were made by J. M. Power to the holders of the common stock of $60 per share on April 26, 1920, and $15 per share on April 1, 1922, on which date there remained some accounts still uncollected.

Of the sums paid by the purchaser, the petitioner received on November 15, 1919, $200,000 for this amount par value of preferred stock. No gain resulted to it from this part of the transaction.

Of the 424 shares of common stock held by the petitioner, 319⅞ shares had been purchased by it at par and 104⅛ shares of the par value of $10,412.50 had been received as stock dividends in the years 1916, 1917, and 1918. The cost, therefore, of the 424 shares was $31,987.50. Petitioner received on December 4, 1919, a payment of $200 per share on the common stock owned by it, amounting to $84,800. This sum was received as the sale price of the 424 shares of common stock and resulted in a gain to the petitioner of $52,812.50.

The net value on December 31, 1919, of the accounts receivable and bills receivable, which were assigned to the stockholders, was $84,849. The petitioner's share was $35,975.98. Petitioner kept its accounts on the accrual basis.

The petitioner owned forty-four seventy-sevenths of the capital stock of the Bismarck Elevator & Investment Co., the balance being owned by one I. P. Baker. The Bismarck Elevator & Investment Co. owned one-half of the capital stock of the Benton Packet Co., the other one-half being owned, seventeen twenty-firsts by the petitioner and four twenty-firsts by Baker. Both of these companies operated at a loss for several years prior to 1919. The petitioner set up on its books a general reserve to take care of losses against which advances to make up the deficits of the two companies named were charged. During 1919, $34,625.83 of such advances were charged off by the petitioner on its books. At the close of the year $40,000 was added to the reserve account to provide for unascertained and contingent losses of the character named, making a total of $74,625.83 which was claimed by the petitioner as a deduction. There was charged against the $40,000 reserve the sum of $20,000, representing amounts paid by the petitioner as endorser of notes of the two corporations which the petitioner was obliged to meet.

A part of the claimed losses was disallowed by the Commissioner, but the evidence is not clear as to the amount disallowed.

The Bismarck Elevator & Investment Co. was in the business of buying and selling grain and owned grain elevators along the Missouri River. The Benton Packet Co. was engaged in transporting grain on the Missouri River. It had property consisting of steam-

boats, gasoline boats, one or two warehouses and various equipment such as is ordinarily appurtenant to a boat line.

OPINION.

GREEN: Of the sums paid by the purchaser of the stock of the Montana Oil Co., the petitioner received $200,000 for this amount par value of preferred stock. No question was raised as to the cost of this stock or as to the basis of the allocation of this amount as the sale price. No gain or loss is shown or claimed on this part of the transaction.

The petitioner also received, on December 4, 1919, a distribution in cash equal to $200 per share of common stock. On January 6, 1920, J. M. Power, as agent or trustee of the holders of the common stock, received an assignment from the Montana Oil Co. of accounts receivable and bills receivable of the net face value of $84,849, or $84.849 per share of common stock. The Commissioner treated the sum of the cash distribution and the face value of the receivables assigned, as the sale price of the common stock. The total being $120,375.98, he found that the petitioner realized a gain from the sale of its 424 shares of common stock of $88,388.48. The petitioner contends it did not realize any profit thereon in 1919; that the purchaser paid $300,000, the par value of the outstanding stock, and $321,534 as the cost price of the merchandise, but the stockholders assumed obligations totaling $331,482, so that they really sustained a loss; and that the bills receivable and accounts receivable, if income at all, were not income in 1919, which is the year involved here.

The first question is whether the accounts receivable and bills receivable were a part of the purchase price of the stock. There is no doubt in our minds that they were not. This property came to the stockholders from the corporation and not from the purchaser of the shares of stock. It was a portion of the assets of the corporation expressly reserved for distribution to the retiring stockholders. It was testified that the investment in and the value of the plant and equipment and other physical assets (exclusive of the merchandise) was equal to the par value of the outstanding stock. Therefore, the distribution of the accounts receivable and bills receivable was a form of dividend from assets in excess of capital stock. *Hyams* v. *Old Dominion Copper Mining & Smelting Co.*, 82 N. J. Eq. 507; 89 Atl. 37; affd. 83 N. J. Eq. 705; 92 Atl. 588; *Cogswell* v. *Second National Bank*, 78 Conn. 75; 60 Atl. 1059; affd. 204 U. S. 1. A division of profits is a dividend even though it is not called a dividend. 2 Cook on Corporations, sec. 534; *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 509; 127 N. W. 752. However, whether it was income in 1919 or in 1920 is not quite so plain.

In section 234 of the Revenue Act of 1918 it was provided:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

*    *    *    *    *    *    *

(6) Amounts received as dividends from a corporation which is taxable under this title upon its net income, and amounts received as dividends from a personal service corporation out of earnings or profits upon which income tax has been imposed by Act of Congress.

The Montana Oil Co. is a corporation taxable under this title and the dividends paid by it to the petitioner herein should in the computation of the petitioner's taxable income be included in gross income and thereafter deducted pursuant to the provisions of the statute quoted above. It follows therefore that the date as to which the dividend should be included in the petitioner's gross income is a matter of no consequence inasmuch as the petitioner's tax for any year will not be increased by reason of its having received the dividend.

The petitioner claims the debts of the Montana Co. assumed by the old stockholders exceeded by about $10,000 the sums received as the value of the merchandise, and hence the petitioner really sustained a loss. It was testified that the outstanding liabilities on August 30, 1919, were $331,482, while the value of merchandise was $321,534. This testimony, however, can not be reconciled with other facts which appear in evidence and the discrepancies were not explained. When the second contract was signed the purchaser paid an additional $17,500 which is unaccounted for in the computations. Among the debts there was mentioned an amount owing to this petitioner of $76,500, but included in the accounts receivable was an amount due from the petitioner of $64,000, from which a distribution was made by the trustee in 1920. Also we have the fact that the holders of common stock did receive $200 per share on December 4, 1919. It is asserted in the brief filed on behalf of the petitioner that of this sum $100 per share was a dividend. There is nothing in the record to sustain this assertion and we can not assume it is so. While it is not shown how this total is arrived at, the only reasonable inference we can make from the testimony is that it was received as the sale price of the common stock. It was distributed by J. M. Power, who was acting as trustee for the stockholders under the contracts, and it does not appear that any part of it came from the corporation.

The remaining issue is whether the petitioner is entitled to deduct as bad debts advances made by it to the Bismarck Elevator & Investment Co. and the Benton Packet Co. The evidence does not sustain the petitioner's contention that these advances were bad debts. Each of those corporations in 1919 had assets which were

valuable and the petitioner would be entitled to participate with other creditors in any distribution on a liquidation, so that the debts were not worthless in 1919. Also the testimony shows that the reserve set up by the petitioner was intended to provide for unascertained and future losses as well as depreciation and obsolescence of the property of the debtor corporations. The provision of the Revenue Act allowing the deduction of bad debts contemplates only debts which are in existence and have been ascertained to be worthless within the taxable year.

> *Judgment will be entered after 15 days' notice, under Rule 50.*

MILLIKEN did not participate.