*841 OPINION.
Green:
Of the sums paid by the purchaser of the stock of the Montana Oil Co., the petitioner received $200,000 for this amount par value of preferred stock. No question was raised as to the cost of this stock or as to the basis of the allocation of this amount as the sale price. No gain or loss is shown or claimed on this part of the transaction.
The petitioner also received, on December 4, 1919, a distribution in cash equal to $200 per share of common stock. On January 6, 1920, J. M. Power, as agent or trustee of the holders of the common stock, received an assignment from the Montana Oil Co. of accounts receivable and bills receivable of the net face value of $84,849, or $84.849 per share of common stock. The Commissioner treated the sum of the cash distribution and the face value of the receivables assigned, as the sale price of the common stock. The total being $120,375.98, he found that the petitioner realized a gain from the sale of its 424 shares of common stock of $88,388.48. The petitioner contends it did not realize any profit thereon in 1919; that the purchaser paid $300,000, the par value of the outstanding stock, and $321,534 as the cost price of the merchandise, but the stockholders assumed obligations totaling $331,482, so that they really sustained a loss; and that the bills receivable and accounts receivable, if income at all, were not income in 1919, which is the year involved here.
The first question is whether the accounts receivable and bills receivable were a part of the purchase price of the stock. There is no doubt in our minds that they were not. This property came to the stockholders from the corporation and not from the purchaser of the shares of stock. It was a portion of the assets of the corporation expressly reserved for distribution to the retiring stockholders. It was testified that the investment in and the value of the plant and equipment and other physical assets (exclusive of the merchandise) was equal to the par value of the outstanding stock. Therefore, the distribution of the accounts receivable and bills receivable was a form of dividend from assets in excess of capital stock. Hyams v. Old Dominion Copper Mining & Smelting Co., 82 N. J. Eq. 507; 89 Atl. 37; affd. 83 N. J. Eq. 705; 92 Atl. 588; Cogswell v. Second National Bank, 78 Conn. 75; 60 Atl. 1059; affd. 204 U. S. 1. A division of profits is a dividend even though it is not called a dividend. 2 Cook on Corporations, sec. 534; Barnes v. Spencer & Barnes Co., 162 Mich. 509; 127 N. W. 752. However, whether it was income in 1919 or in 1920 is not quite so plain.
*842 In section 234 of the Revenue Act of 1918 it was provided:
(а) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
*******
(б) Amounts received as dividends from a corporation which is taxable under this title upon its net income, and amounts received as dividends from a personal service corporation out of earnings or profits upon which income tax has been imposed by Act of Congress.
The Montana Oil Co. is a corporation taxable under this title and the dividends paid by it to the petitioner herein should in the computation of the petitioner’s taxable income be included in gross income and thereafter deducted pursuant to the provisions of the statute quoted above. It follows therefore that the date as to which the dividend should be included in the petitioner’s gross income is a matter of no consequence inasmuch as the petitioner’s tax for any year will not be increased by reason of its having received the dividend.
The petitioner claims the debts of the Montana Co. assumed by the old stockholders exceeded by about $10,000 the sums received as the value of the merchandise, and hence the petitioner really sustained a loss. It was testified that the outstanding liabilities on August 30, 1919, were $331,482, while the value of merchandise was $321,534. This testimony, however, can not be reconciled with other facts which appear in evidence and the discrepancies were not explained. When the second contract was signed the purchaser paid an additional $17,500 which is unaccounted for in the computations. Among the debts there was mentioned an amount owing to this petitioner of $76,500, but included in the accounts receivable was an amount due from the petitioner of $64,000, from which a distribution was made by the trustee in 1920. Also we have the fact that the holders of common stock did receive $200 per share on December 4, 1919. It is asserted in the brief filed on behalf of the petitioner that of this sum $100 per share was a dividend. There is nothing in the record to sustain this assertion and we can not assume it is so. While it is not shown how this total is arrived at, the only reasonable inference we can make from the testimony is that it was received as the sale price of the common stock. It was distributed by J. M. Power, who was acting as trustee for the stockholders under the contracts, and it does not appear that any part of it came from the corporation.
The remaining issue is whether the petitioner is entitled to deduct as bad debts advances made by it to the Bismarck Elevator & Investment Co. and the Benton Packet Co. The evidence does not sustain the petitioner’s contention that these advances were bad debts. Each of those corporations in 1919 had assets which were *843 valuable and. the petitioner would be entitled to 'participate with other creditors in any distribution on a liquidation, so that the debts were not worthless in 1919. Also the testimony shows that the reserve set up by the petitioner was intended to provide for unascertained and future losses as well as depreciation and obsolescence of the property of the debtor corporations: The provision of the Revenue Act allowing the deduction of bad debts contemplates only debts which are in existence and have been ascertained to be worthless within the taxable year.
Judgment will he entered after 15 days' notice, under Rule 50.
Milliken did not participate.