**LEVY et al. v. UNITED STATES.**

No. 46468.

Court of Claims.
Oct. 7, 1946.

LITTLETON, Judge, dissenting.

Joseph B. Winokur, of Philadelphia, Pa., (Maurice J. Klein and Loewenstein & Winokur, all of Philadelphia, Pa., on the brief), for plaintiffs.

John A. Rees, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES and MADDEN, Judges.

WHALEY, Chief Justice.

The plaintiffs are executors of the will of Leon Levy, who died August 29, 1942.

In his Federal income tax return for the calendar year 1941 Levy had excluded from his gross income a sum of $7,380, which he stated in his return had been received by him but was, as he asserted, nontaxable because representing "dividends upon shares of stock of Stern & Co., to be applied as portion of the sale price of said shares in accordance with an agreement to sell duly entered into by the taxpayer," citing Moore v. Commissioner, 7 Cir., 124 F.2d 991.

The agreement thus referred to was entered into November 19, 1941, the parties thereto being Leon Levy (the decedent), his wife, Hetty B. Levy, and Stern & Co. The agreement as to Mrs. Levy is not here involved.

By this agreement Levy agreed to sell to Stern & Co. 246,000 shares of the common stock of that company, which Levy then held. The agreement recited: "The price to be paid for each share of stock agreed to be sold hereby shall be $1.6035 per share less the credit for dividend payments, as more fully hereinafter set forth." The sales were to begin in 1942, in units of 20,500 each year, extending over 12 years.

Levy agreed to deliver the certificates for the 246,000 shares to Joseph B. Winokur, in escrow, "accompanied by proper assignments," to carry the agreement into effect, and they were so delivered at the time of the agreement.

The agreement further provided: "The sale of each of the certificates compromising units of 20,500 shares * * * shall not be complete or the title passed thereto until the payment for the shares represented by the said certificates shall have been made in full and only thereupon shall

Escrowee deliver to Company [referring to Stern & Co.] the said certificates comprising units of 20,500 shares * * *. Until delivery by Escrowee of certificates paid for by Company, Leon Levy [and Mrs. Levy] shall continue as owners of their respective shares and shall have all of the rights of shareholders including voting rights as to all of their respective certificates remaining in possession of the Escrowee."

The company was to make quarterly payments to the escrowee on the first day of March, June, September, and December of each year, beginning in 1942, of one-quarter of the purchase price of a 20,500-share unit, using the purchase price of $1.6035 per share.

As these units of 20,500 shares were paid for, the certificates representing them were to be turned over by the escrowee to Stern & Co.

Dividends on stock remaining in the hands of the escrowee were payable to Levy. When Levy received them, he was to credit Stern & Co. with such receipt as a payment on the purchase price.

The agreement refers to a purchase price of $1.6035 per share "less the credit for dividend payments," and says that "the dividends so paid and applied shall be in reduction of the purchase price."

Reading the contract as a whole, and considering how it worked, it is apparent that the purchase price of $1.6035 was a fixed price, not reducible.

The so-called "reduction" in price meant merely that dividend payments were to be applied to the purchase price, in satisfaction thereof pro tanto.

The dividend payment here involved, $7,-380, was received by the taxpayer December 17, 1941. Under the contract both taxpayer and escrowee credited that sum against the first quarterly payment due March 1, 1942, which was $8,217.94, being 20,500 shares at $1.6035 divided by four. The excess of $8,217.94 over $7,380 is $837.-94 and under the terms of the agreement this excess was to be met by the company's check payable to the order of the escrowee who was to endorse the check over to Levy without recourse.

The defendant treated the receipt of this sum of $7,380 as income to the taxpayer for the calendar year 1941. Following the established mesne process of the Bureau of Internal Revenue, a notice of deficiency in tax was served upon the plaintiffs, the deficiency, with interest, was assessed and on July 26, 1944, was paid by the plaintiffs.

The plaintiffs on November 3, 1944, filed claim for refund of $5,117 plus accrued interest, and no action has been taken thereon. No question is raised as to jurisdiction.

The contract provided that title did not pass on shares not paid for. Inasmuch as dividends on all unpaid shares were by the contract payments made on the purchase price of shares being sold, the beneficial interest in prospective dividends on all shares not yet acquired by the company had been transferred to and resided in the company.

The company was bound to pay the purchase price of $1.6035 and what the taxpayer received by the name of dividends was this purchase price, for the contract made it part of the purchase price.

Dividends must be income as dividends to someone in order to be taxable as dividends. That proposition is primary and elemental. They are not income to the distributing company, nor are they income to one to whom they are not distributable or distributed. Here we have a contract between distributor and distributee that the dividends shall be income to the distributee only for the purpose of applying them to the purchase price, that is, as income to the distributee only as part of the purchase price.

The taxpayer had no option as to application of dividends on stock standing in his name. He was obligated to credit them to payments of the purchase price. So was the escrowee. As the taxpayer received the so-called dividends, both he and the company were to notify the escrowee as to the amount of credit. This notification governed the escrowee in his disposition of the certificates of stock, but a neglect to notify, or a mistake in notification, did not affect the rights or relations of the parties.

It was a three-sided transaction and what the company parted with, considering the

transaction as a whole was installments on the purchase price.

The accounting was simple enough. The dividends were credits on the purchase price of $1.6035.

Instead of crediting the company with a dividend payment and closing that phase of the accounting, the taxpayer credited the company as for a payment on the purchase price. It was not a series of transactions, but was one transaction only, made so by the contract which was its creator.

There was one payment only, and that payment is to be characterized by its object, namely, satisfaction of the purchase price. The money was income to the taxpayer as payment on the purchase price.

■ We must here consider what the contract accomplished. What it did accomplish was to afford gross income to the taxpayer by way of receipt of the purchase price. For income tax purposes the transaction is one transaction, and cannot be so split up as to convert it into a plurality of incomes.

The construction of revenue legislation must be attended with all possible simplicity. If this were not so, we would here have three incomes, one to the instant taxpayer as recipient of a dividend, another to the company as the recipient of income from the taxpayer (for the purpose of enabling the company to satisfy the purchase price), and the third to the instant taxpayer as receipt on sale of shares of stock. Revenue legislation is complex enough without resort to emphasis where it does not belong. The essence of this transaction is the agreement to sell shares of stock, and the payments on the agreed purchase price.

■ Certain it is that the taxpayer received no benefit by way of dividends; for he had to apply the payments to the purchase price, which was payable, not by himself, but by the company that had at that very moment paid him. The contract required him to treat the payments as payments of the purchase price. He had no alternative. "* * * taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed 916. Here the decedent had no command over the payment made by the company— whatever else he might wish to do with it, it had to be applied in satisfaction of the purchase price.

The beneficial interest in the dividends not being in Levy, who did not receive the dividends as dividends, he was not liable for the tax on them as dividends. See Moore v. Commissioner, 7 Cir., 124 F.2d 991, 993. The instant case is more in favor of the taxpayer than was the Moore case, for in the Moore case the purchaser was not the stock-issuing company, but a third party. Here the stock-issuing company was the stock-purchasing company and paid the dividends under an agreement with the vendor that the dividends were to be considered and treated as payments on the purchase price of the stock.

In their very inception, the payments were payments on the purchase price. The company had agreed that it should be so. If it were otherwise, and the dividends were to be treated as taxable dividends in the hands of the decedent, then we would have the anomalous situation of the vendor of the stock paying the purchase price. This could not be so.

The plaintiffs are entitled to recover, and it is so ordered.

Judgment will be rendered upon the coming in of a stipulation by the parties as to the amount thereof.

JONES and WHITAKER, Judges, concur.

LITTLETON, Judge, dissents.

MADDEN, Judge, took no part in the decision of this case.