## NORTHERN TRUST CO. OF CHICAGO v. UNITED STATES.

No. 10350.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1951.

Rehearing Denied Jan. 12, 1952.

Otto Kerner, Jr., U. S. Atty., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., Theron L. Caudle, Asst. Atty. Gen., Morton K. Rothschild, Ellis N. Slack, A. F. Prescott, Special Assts. to the Atty. Gen., for appellant.

Clarence F. Martin, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff succeeded in its suit to recover alleged over-payment of income taxes for 1936. From the resulting judgment for $1689.29 and interest the government appeals.

On August 10, 1936, Edward Gomoll, now deceased, who was the taxpayer, and Edith Rennert, each owning one-half of 50 shares constituting the entire capital stock of the Standard Paste & Glue Company, entered into a written contract for·sale by Rennert of the 25 shares owned by her to Gomoll, at $1000 per share, a total of $25,000. The purchaser advanced $7500 and executed his unconditional promissory note payable to the vendor for the balance, $17,500. On August 14, the two entered into an escrow agreement, under which Rennert's stock certificate, endorsed in blank and attached to the deceased taxpayer's installment note, and the agreement of August 10 were deposited in escrow with a trust company. The sales contract provided that title to the certificate of stock placed in escrow "shall vest in the (purchaser) only upon payment in full of the whole of the purchase price"; that all dividends upon the stock until payment of the purchase price in full shall be paid "over to" Rennert "on account of the next installment or installments either of principal or of interest on payments of the purchase price"; that the payments "shall be endorsed upon the note deposited in escrow", and thereby "reduce the obligation" of Gomoll "pro tanto", and that, absent any default, the vendor of the stock would vote it as the purchaser might direct, except for dissolution or liquidation of the company.

Four months after execution of the sales contract and the escrow agreement, in December 1936, while the escrow was still pending and the stock certificate and the note were still held by the escrow agent, the company declared a dividend of $300 a share payable out of corporate earnings accruing prior to August 10, 1936. The dividend of $7500 upon the 25 shares of stock in escrow was paid by check to the trust company, who thereupon applied the same as credit to Gomoll upon his note. Gomoll did not include the dividend in his income tax return for the year 1936. The commissioner, taking the position that it was income to him, declared a deficiency upon which the additional tax was levied and paid, under protest. The government asserts that the trial court erred in holding that (1) the taxpayer did not derive income from the dividends, and (2) the taxpayer was not the beneficial owner of the stock from the time of the execution of the contract for sale of the stock, and in rendering judgment for the taxpayer. Plaintiff insists that the dividend was not taxable as income but a partial forgiveness of in-

debtedness or a readjustment of the capital cost of the stock and therefore not taxable.

We think the issue here is not to be distinguished from that presented to us in Moore v. Commissioner, 7 Cir., 124 F.2d 991, 993 and to the Second Circuit in De-Guire v. Higgins, 159 F.2d 921. In the Moore case, the certificates of stock of the vendor were endorsed in blank and attached to the notes of the purchaser, both the notes and the certificates then being deposited with a trust company in escrow to be delivered to the purchaser upon payment of the notes with interest. The contract expressly provided that the purchaser should not be personally liable to pay the notes. There was no transfer of title to the certificates on the books of the company; consequently dividends declared were issued payable to the vendor, as the stockholder of record. However, the dividend checks were eventually delivered to the escrow agent and by it credited upon the notes of the purchaser. When the case came before this court, the majority said: "Even if title to the stock remained in the Petitioner, it was only to secure her in payment of the balance of the purchase price. The beneficial use of the property was certainly in De-Guire. * * *

"If the $28,000 dividend was a dividend to the Petitioner and belonged to her, we have the extraordinary situation of the Petitioner taking $28,000 that belonged to her and paying off an obligation that someone else owed her. * * * If this were the stock of the Petitioner, she would not be apt to put up her stock as collateral on an obligation due to herself. * * *

"Since the beneficial ownership of the property was not in the Petitioner and she did not receive the dividend as a dividend, she is not liable for the tax on such dividend. Bettendorf v. Commissioner, 8 Cir., 49 F.2d 173–175; Shellabarger v. Commissioner, 7 Cir., 38 F.2d 566; Central Life Assurance Society v. Commissioner, 8 Cir., 51 F.2d 939–941." Concerning construction of tax statutes generally, the court added: "Tax statutes deal with realities and not fiction or fine-spun legalistic distinctions. In Griffiths v. Commissioner, 308 U.S. 355–357, 60 S.Ct. 277, 278, 84 L.Ed. 319, speaking for the Court, Mr. Justice Frankfurter said: 'We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." ' " Accordingly, we held that the dividends were not income to the vendor.

When the Commissioner assessed a tax against the purchaser, the Court of Appeals for the Second Circuit, in DeGuire v. Higgins, 159 F.2d 921, 923, agreed with this court that the dividends did not belong to the vendor but to the purchaser, saying: "The dividends were earnings upon the shares and were inexorably someone's income; they were taxable as income either to DeGuire or to Mrs. Moore", and concluded that they were income to the purchaser. Judge Clark, in his concurring opinion, said: " * * * the payments must certainly be income to one or the other of the parties; why not to that one who has the greater number of attributes of ownership? Here the analogy of ownership to a 'bundle' of rights is useful; who has the more, Mrs. Moore or DeGuire? And for tax purposes, we should look to practicalities, disregarding merely formal and not useful rights * * *. Comparing beneficial rights, as well as powers and privileges, of the two, it seems to me we cannot avoid the conclusion that DeGuire has many more as to the stock than has Mrs. Moore. This was in substance the view of the majority in the Seventh Circuit. Moore v. Commissioner of Internal Revenue, 7 Cir., 124 F.2d 991; in fact it has been reiterated by the entire court in a case on all fours, Lee v. Commissioner of Internal Revenue, 7 Cir., 143 F.2d 4 [6]." In the latter case, this court, reached a similar conclusion, saying: "We are convinced that the acceptance of the shares of stock paid for out of the dividends of the corporation constituted acceptance of the benefit of the dividends which were thus constructively received by petitioner." To the same effect are Long v. U. S., 66 S.Ct. Cl. 475 and Levy v. U. S., 67 F.Supp. 958, 108 Ct.Cl. 409.

■ We think that the taxpayer's reliance upon those cases which have to do with forgiveness of indebtedness is misplaced. Thus, in Hirsch v. Commissioner, 7 Cir., 115 F.2d 656, there was an unpaid balance due on the purchase price of certain property which had greatly depreciated in value. A reduction of $7000 in the amount remaining due was made, and this the Commissioner attempted to tax. But, as we said there, the forgiveness by reduction of the mortgage debt was merely a reduction in cost, an item to be considered in determining the capital investment only. We recognize that where the reduction results in a gain in assets, it may result in taxable income to the beneficiary. Such cases have to do with partial forgiveness or readjustment of the contract resulting in an increase in assets of the taxpayer and are distinguished from cases involving gratuitous forgiveness and such similar situations resulting in no gain or income. We have here no contract to reduce the purchase price or to forgive indebtedness and no evidence from which an inference of such an agreement can be drawn. As the Supreme Court in Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 581, 87 L.Ed. 785, commented: "The broad import of gross income in Section 22(a) [26 U.S.C.A. § 22(a)], admonishes us to be chary of extending any words of exemption beyond their plain meaning. Cf. Heiner v. Colonial Trust Co., 275 U.S. 232, 235, 48 S.Ct. 65, 66, 72 L.Ed. 256; United States v. Stewart, 311 U.S. 60, 63, 61 S.Ct. 102, 104, 85 L.Ed. 40." Instead of being concerned here with a partial forgiveness of indebtedness or a reduction in the purchase price, whereby the capital investment of the taxpayer was decreased, we are confronted with the practical tax question of whether, when a dividend is declared and paid out of earnings accruing prior to the date of the purchase, it brings to the beneficial owner taxable income.

■ It is wholly immaterial that the dividend may have reduced the value of the taxpayer's capital investment, that is, his undivided share in the assets of the corporation, for that is·true whenever any dividend is declared and paid. Thus, in United States v. Phellis, 257 U.S. 156 at page 170, 42 S.Ct. 63, at page 66, 66 L.Ed. 180, the court said: "That a comparison of the market value of claimant's shares in the New Jersey corporation immediately before with the aggregate market value of those shares plus the dividend shares immediately after the dividend showed no change in the aggregate * * * seems to us a circumstance of no particular importance in the present inquiry. * * *. It is the appropriate function of a dividend to convert a part of a surplus thus accumulated from property of the company into property of the individual stockholders; * * *. That the distribution reduces the intrinsic capital value of the shares by an equal amount is a normal and necessary effect of all dividend distributions—whether large or small and whether paid in money or in other divisible assets—but such reduction constitutes the dividend none the less income derived by the stockholder * * *. Hence a comparison of aggregate values immediately before with those immediately after the dividend is not a proper test for determining whether individual income, taxable against the stockholder, has been received by means of the dividend. * * * Where, as in this case, the dividend constitutes a distribution of profits accumulated during an extended period and bears a large proportion to the par value of the stock, if an investor happened to buy stock shortly before the dividend, paying a price enhanced by an estimate of the capital plus the surplus of the company, and after distribution of the surplus, with corresponding reduction in the intrinsic and market value of the shares, he was called upon to pay a tax upon the dividend received, it might look in his case like a tax upon his capital. But it is only apparently so. In buying at a price that reflected the accumulated profits, he of course acquired as a part of the valuable rights purchased the prospect of a dividend from the accumulations—bought 'dividend on,' as the phrase goes—and necessarily took subject to the burden of the income tax proper to be assessed against him by reason of the dividend if and when made.

He simply stepped into the shoes, in this as in other respects, of the stockholder whose shares he acquired, and presumably the prospect of a dividend influenced the price paid, and was discounted by the prospect of an income tax to be paid thereon."

■ Congress has seen fit to tax cash dividends irrespective of the resulting effect of payment of the dividend upon the stockholder's undivided interest in the capital of the corporation. Thus, the Supreme Court said in Lynch, Collector v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 546, 62 L.Ed. 1149: "We do not overlook the fact that every dividend distribution diminishes by just so much the assets of the corporation, and in a theoretical sense reduces the intrinsic value of the stock. But, at the same time, it demonstrates the capacity of the corporation to pay dividends, holds out a promise of further dividends in the future, and quite probably increases the market value of the shares. In our opinion, Congress laid hold of dividends paid in the ordinary course as de facto income of the stockholder, without regard to the ultimate effect upon the corporation resulting from their payment." Under the statute this dividend was taxable to the stockholder to whom it belonged. The seller and the purchaser of the stock could not so manipulate their contracts or so frame them as to evade the tax due. Clearly the income is that of the beneficial owner of the stock, and under the decision of this court in the Moore case and that of the Second Circuit in the DeGuire case, which are not to be distinguished from the present case, it follows clearly, we think, that the purchaser, who was the beneficial owner of the stock, received the full benefit of the dividend; that he alone was entitled to receive it, as the beneficial owner, and that he realized income in its receipt and disposition by application upon what he still owed for the stock.

The District Court thought that until legal title had passed, the purchaser was not entitled to the income from the stock, but, as we have seen, the beneficial interest in the stock and all accruements therefrom were in the beneficial owner, the purchaser.

■ The trial court relied upon the Uniform Sales Act of Illinois, one section of which provides that the time of transfer shall be as intended by the parties. We think the applicable section is 22(a), Ill. Rev.Stat.1951, c. 121½, § 22(a), as follows: "Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery." Under the Moore case, which we think applicable, the title of record was retained by the vendor merely as security for payment of the purchase price. Hence the goods were at the buyer's risk from the time of delivery; if the stock's value became greater, that was the purchaser's good fortune; if it became less, that was the taxpayer's bad fortune; if the company had become insolvent, that fact would have created no defense to his unconditional liability to pay the full purchase price. In the absence of an agreement clearly evincing an intent on the part of the vendor to give back to the purchaser part of his indebtedness, the latter remained bound to pay the full purchase price. The dividend, having been declared, belonged to him and him alone. Its receipt did not reduce his purchase price but was income which he caused to be applied upon what he still owed for the stock, thus realizing, for himself, its full benefit.

We conclude that the dividend was income to the purchaser. The judgment is reversed.