OPINION. Rice, Judge: Transactions within a family group are subject to special scrutiny in order to determine if they are in economic reality what they appear to be on their face. This is not to say, however, that all arrangements between members of a family which affect their tax liabilities will be disregarded. It is authoritatively established that where a taxpayer attempts to transfer property and the end result of such transfer does not effect a complete shift in the economic incidents of ownership of such property, the transaction will be disregarded for Federal income tax purposes. This is true because the transferor in such cases retains such control over the property that he is the one who derives the real benefit from the economic gain thereon. The foregoing principles are so fundamental and have been reiterated in so many previous decisions that no citation of authorities is required. In this case, petitioner relies on three cases: Moore v. Commissioner (C. A. 7, 1941), 124 F. 2d 991; Levy v. United States (Ct. Cl., 1946), 67 F. Supp. 958; and De Guire v. Higgins (C. A. 2, 1947), 159 F. 2d 921, certiorari denied 331 U. S. 858 (1947). All three cases involved a sale of stock, part of the purchase price for which was to be paid out of dividends from the stock. The Moore and De Guire cases arose out of the same transaction, and it was held that the dividends were not income to Moore, the seller, but to De Guire, the purchaser. In that case, $43,904 was paid in cash by De Guire, and the remainder was evidenced by four interest-bearing notes. The notes and the stock were placed in escrow, and as each note was paid, the stock allocated thereto was turned over to De Guire. Moore retained certain limited voting rights. All dividends on the stock were to be received by Moore and credited on the principal and interest of the notes. If any note was unpaid, the stock allocated thereto was to be returned to Moore. In 1936, a dividend of $28,000 was paid on the stock which was sufficient to cover two of the notes, and the stock allocated to such notes was turned over to De Guire. It was held that the 1936 dividends were includible in De Guire’s gross income. In 1937, the dividends on the stock were not sufficient to cover the interest and principal on the two remaining notes, and De Guire paid Moore the amount not covered by the dividends. The court held that De Guire received the dividends conditionally in both 1936 and 1937, and they were, therefore, includible in his income for those years. In the Levy case, the facts were substantially similar to the facts in the Moore and De Guire cases, except that, in the Levy case, no down payment was made. An important distinction between those cases and the instant case is that the parties in those cases were not related, whereas, here, we have a transaction between a mother and her two children. Also, in this case, there was no down payment, no interest was required to be paid on the unpaid balance, and the first installment was not required to be made until one year after the agreements had been executed. Another important distinction between this case and the cited cases is that, here, the petitioner paid the increased income taxes of her children. It is also to be noted that the cited cases all involved an interpretation of the instrument to determine the tax liabilities of the parties. The bona fides of the transaction was not an issue. For other cases similar to those cited by petitioner, see Northern Trust Co. of Chicago, Executor v. United States (C. A. 7, 1951), 193 F. 2d 127, certiorari denied 343 U. S. 956 (1952); and Lee v. Commissioner (C. A. 7, 1944), 143 F. 2d 4. In Gouldmam, v. Commissioner (C. A. 4, 1948), 165 F. 2d 686, affirming a Memorandum Opinion of this Court, the Commissioner’s determination that dividends from a certain corporation were taxable to the taxpayer-father rather than his son who held title to the stock of the corporation was upheld. The taxpayer was the president and a substantial stockholder of a bank. He and another individual organized a corporation to engage in the fish business. Each individual purchased 50 shares of stock for $5,000. Two months later, 40 shares of stock were transferred from the father to the son for which the son paid $4,000 borrowing that amount from his father’s bank to make the purchase. During the two months that had elapsed, the business had been profitable, and there was reason to believe it would continue to be profitable. In December of the same year (1941), the corporation declared and paid a 100 per cent dividend. The son deposited the $4,000 in his bank, and on the same day made a loan of $3,500 to his father. The son included the $4,000 dividend in his 1941 income. In 1942, the corporation paid a 50 per cent dividend, and a check for $2,000 was delivered to the son. On the same day, the son advanced $1,750 to his father. Both advances were secured by stock of the father’s bank. The taxpayer discharged the two advances in 1946, but at the time the case was heard by this Court, the taxpayer was indebted to his son in the sum of $5,100 by virtue of other borrowings. The Court of Appeals held that sufficient evidence was present for this Court’s findings and pointed out that the initiative for the sale of the stock came solely from the taxpayer, that the son was unable to pay for the stock at the time he purchased it, that the son exercised no control over the stock, and that the father actually enjoyed the dividends on the stock. All of the factors emphasized by the Court of Appeals in that case are present in this case, except the inability to pay for the stock. As shown in our findings of fact, the agreements made no provision with respect to whom the 1946 dividends of the Company were to be paid. However, one-half of such dividends were credited on petitioner’s books to her son and one-half to her daughter. No explanation was given to the Court as to why those dividends were credited on the alleged purchase price when it was not required by the agreements. In 1949, the $4,000 minimum annual payment provided for in the agreements was not paid to petitioner when the $1,300 she gave to each of them for their increased income taxes is taken into consideration. The record does not disclose that either of the children made any other payment out of their own funds; and we must, therefore, assume that they did not. Neither does the record show that any demand was ever made on the children to make up the difference for that year; and we must assume, again, that no such demand was made. Under the agreements, the petitioner was to vote the stock as directed in writing by her children. There is no convincing evidence in the record that either of her children ever gave petitioner written instructions to vote the stock. The petitioner continued to vote the stock in the same manner as she had voted it prior to the execution of the agreements, and she exercised the same control over it as she had before such execution. The two letters from Toledo brokers, introduced by petitioner evidently to corroborate her testimony that she had sought other buyers for the stock, indicate, to our mind, that she was merely attempting to get a price for the stock to guide her in fixing its value for purposes of the agreements. Petitioner did not offer in evidence copies of her letters to the brokers. For the seven years 1940 through 1946, the stock paid an average dividend of $7.93 a share which, at $150 a share, was a return of approximately 5.3 per cent. For the years 1946 and 1947, the taxable years here in question, the stock paid an average dividend of $16.25 a share which, at $150 a share, was a return of approximately 10.8 per cent. The book value of the stock, as shown in our findings of fact for the years 1941 through 1946, was considerably higher than $150. The earnings record of the company was good, and it had efficient management. After careful study of the entire record, the conclusion seems inescapable that if the sale of the stock had been to a person outside the family in an arm’s-length transaction, the petitioner would have demanded and received a much higher price for it. The parties to the agreements in this case treated them with such informality that we must conclude from the record as a whole that they did not intend to be bound by the provisions contained therein, and that, while the agreements passed technical title to the stock, they did not constitute a bona fide arm’s-length transaction for Federal income tax purposes. In view of our conclusion, it is unnecessary to consider respondent’s alternative argument that the 1946 dividends were includible in petitioner’s income for that year in any event. Decision will be entered for the respondent.