MCKINLEY CORPORATION OF OHIO, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78001. Filed September 29, 1961.

*Joseph J. Lyman, Esq.,* for the petitioner.
*Frank W. Hardy, Esq.,* for the respondent.

---

1186

OPINION.

OPPER, *Judge:* Petitioner's reliance on the principle of "substance over form" seems to us without foundation on this record.   Laying

to one side the proposition that the form adopted by the taxpayer may be accepted by respondent, even though some other method, less severe in its tax consequences, might have been employed, *Higgins* v. *Smith*, 308 U.S. 473 (1940), and that it is not ordinarily permissible for a petitioner to disclaim for tax purposes what he has actually done, especially when the means employed was purposely chosen to produce some other benefit, *Sheldon Bldg. Corp.* v. *Commissioner*, 118 F. 2d 835, 836 (C.A. 7, 1941), affirming a Memorandum Opinion of this Court; *Kaufmann* v. *Commissioner*, 175 F. 2d 28, 31 (C.A. 3, 1949), affirming 11 T.C. 483 (1948), we think the present facts show that what was accomplished was precisely what the parties intended.

We may accept petitioner's premise that the former stockholders of Piston were concerned with the possible application of the unreasonable earnings accumulation provisions of section 102 of the 1939 Code, and that they desired to find a buyer for their stock in order to achieve a capital gains result in place of the ordinary income treatment which would have been accorded the distribution of a dividend. We may also recognize, with petitioner, its lack of cash which made the purchase impossible out of its own resources or those of its sole stockholder.

What seems to us impossible to overlook is the ingenious method by which the parties, including petitioner and its sole stockholder, managed to create a true sale and to supply petitioner, aided by the stockholder's cooperation, with the necessary funds. This latter essential ingredient of the transaction was accomplished by petitioner's arranging to obtain a loan from a third party, for which petitioner and its stockholder were alone liable. It was repaid by petitioner. It was secured by collateral to which petitioner was taking title and in which, at the time, petitioner had the sole beneficial interest. See *Jaeger* v. *Hardy*, 48 Ohio St. 335, 27 N.E. 863 (1891); *Coggshal* v. *Marine Bank Co.*, 63 Ohio St. 88, 57 N.E. 1086 (1900); *Butcher* v. *Kagey Lumber Co.*, 164 Ohio St. 85, 128 N.E. 2d 54 (1955).

That petitioner in order to obtain the cash with which to make repayment of this loan resorted to the expedient of having Piston declare a dividend to it is of no more consequence than if the funds had not been borrowed in the first place, or than if, as occurred to some extent, the funds to repay the first loan had been obtained by another borrowing. What is controlling is that on the one hand petitioner received a dividend, treated it as such, and in fact, so reported it on its income tax return; and, on the other, that the former stockholders sold stock which petitioner bought before the distribution was made.

Petitioner insists that the contract of December 31, 1951, was a contract to sell and not in itself a sale. See, e.g., *J. T. Wurtsbaugh*, 8

T.C. 183 (1947). Assuming this to be so, it is of no help to petitioner. The contract provided for a closing at which the stock would be delivered against payment of cash and the execution of certain notes. The closing date was fixed at 10 a.m. on January 18, 1952, or such earlier date as might be mutually agreed upon. That earlier date was January 17. Upon delivery of the check which took place on the morning of January 17, the contract provided that the shares of stock, endorsed in blank,[1] be delivered to a title company as escrow agent, which was required upon the delivery and recording of the notes and mortgages to transfer "actual possession, control, and title to the stock" to petitioner. Even before this was done and upon delivery of the check, the escrow would have become a trustee with the duty to deliver the stock upon completion of the conditions and petitioner became the beneficial owner thereof. *Northern Trust Co. of Chicago* v. *United States*, 193 F. 2d 127 (C.A. 7, 1951), certiorari denied 343 U.S. 956; *Gordon* v. *Bartlett*, 62 Ohio App. 295, 23 N.E. 2d 964, 969 (1938). If there had been nothing more, the distribution of January 17 would still have been made to petitioner and not to the former owners. See *Rupe Investment Corporation*, 30 T.C. 240, 255 (1958), affd. 266 F. 2d 624 (C.A. 5, 1959). Cf. *Steel Improvement & Forge Co.*, 36 T.C. 265 (1961).

But in addition, as our findings show, the notes were delivered on the morning of January 17 and the necessary mortgages were received by the recorder's office at that time. With this action, the final condition for the passage of title had been performed, the contract was fully executed, and petitioner was, in fact, the legal as well as the beneficial owner. That this was the understanding of the parties is demonstrated by the immediate assumption of actual control by petitioner and indirectly by its sole shareholder.

While it is true that Hendershott, the attorney for the sellers, himself held the stock instead of delivering it to the title company in conformity with the contract, there can be little question, under the circumstances, that he could not have failed to conform to the provisions of the contract. *H. H. Miller Industries Co.* v. *Roman*, 37 Ohio App. 71, 174 N.E. 141 (1930); *De Moss* v. *Conart Motor Sales*, 34 Ohio Op. 535, 72 N.E. 2d 158 (C.P. 1947). The reality as well as the form of the transaction was hence a completed sale of the stock to petitioner and a distribution by Piston to petitioner after petitioner became Piston's shareholder.

Although it may be, as petitioner repeatedly insists, that the ultimate recipient of most of the cash was the selling group and that in a sense all of the complicated intervening transactions were for their benefit, it was the sellers as vendors of the stock who were benefited and not that group as stockholders. On the other hand, the distribu-

---

[1] Uniform Stock Transfer Act, Ohio Rev. Code Ann., secs. 1705.01, 1705.04.

tion was likewise for the benefit of petitioner and this benefit was received, as we have already concluded, in its capacity as stockholder. Petitioner was liable for the payments called for by the contract, as it was, in addition, the maker and obligor on the note for the borrowed purchase price. Any payment made to discharge these obligations would clearly be for petitioner's benefit,[2] *Frithiof T. Christensen*, 33 T.C. 500 (1959); *Northern Trust Co. of Chicago* v. *United States, supra*, entirely aside from the fact that, by means of the total transaction including the payment of its liability, petitioner became the owner of the stock of an apparently prosperous corporation.

The conclusion that the distribution was made to petitioner, that the stock had already been sold to it, and that it was consequently a dividend since there were earnings and profits to support it,[3] leads inevitably to the result that the petitioner was a personal holding company and that in that respect the determination was correct. As petitioner itself says in its brief:

> If the entire distribution of January 17, 1952 was in fact made to petitioner, we must determine whether it was taxable as dividend income. As dividend income it would have been personal holding company income in excess of 80% of petitioner's gross income. It would follow that the personal holding company surtax assessed by respondent would have been proper.

Petitioner should accordingly have filed a personal holding company tax return on Form 1120H. Sec. 39.508-1, Regs. 118. That it did not do so, however, does not necessarily subject it to the addition to tax for failure to file which was imposed by respondent. Here, unlike *Hatfried, Inc.* v. *Commissioner*, 162 F. 2d 628 (C.A. 3, 1947), reversing on this issue a Memorandum Opinion of this Court, all of the essential information indicating that petitioner was a personal holding company appeared on the face of petitioner's income tax return.[4] Not only was the fact disclosed that over 80 percent of petitioner's income was derived from dividends, but the question,

> [D]id any * * * individual * * * at any time during the taxable year own 50 percent or more of the corporation's voting stock?

was answered "Yes, K. McKinley Smith, 75%." And while the personal holding company tax itself was not there computed, that could readily have been done from the information which did appear upon the income tax return. It is accordingly impossible to regard it as no return for purposes of the personal holding company tax.

---

[2] This is the reverse of a situation where accounts and bills receivable and other securities were "assets of the corporation *expressly reserved* for distribution to the retiring stockholders." (Emphasis added.) *T. O. Power & Brother*, 6 B.T.A. 835, 841 (1927). See also *T. J. Coffey, Jr.*, 14 T.C. 1410 (1950).

[3] Petitioner's brief states: "Ohio Piston Company had sufficient accumulated earnings to distribute $537,456.36 on January 17, 1952."

[4] The *Hatfried* case erroneously stated that all material information was included in the return. Assuming this premise, which is justified here, that case is additional authority for the present result.

*Germantown Trust Co.* v. *Commissioner*, 309 U.S. 304 (1940); cf. *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219 (1944). In the face of these disclosed facts, petitioner's answer that it was not a personal holding company was no more than an innocent misstatement of a legal conclusion. As respondent himself contends in attempting to show the incompetence of petitioner's advisers:

The return itself reflected the dividend of $536,176.00 and anyone with even a smattering knowledge of tax law should have recognized that petitioner was a personal holding company.

Insofar as the addition to tax for failure to file is concerned, the determination is disapproved.

The foregoing disposition of the principal issue makes it unnecessary to consider the claim for income tax refund advanced in the petition, which in any event, however, appears to have been abandoned.

*Decision will be entered under Rule 50.*