MARTIN FUNDENBERGER and JOYCE FUNDENBERGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fundenberger v. Commissioner
Docket No. 3236-76.
United States Tax Court
T.C. Memo 1980-113; 1980 Tax Ct. Memo LEXIS 467; 40 T.C.M. (CCH) 138; T.C.M. (RIA) 80113; April 14, 1980, Filed *467 Held, ownership of 90 percent of the stock in a wholly owned small business corporation by petitioners' six minor children was not bona fide and lacked economic reality during the years at issue. Therefore, the children's distributive shares of income from that corporation for fiscal years ending March 31, 1972 and March 31, 1973, are taxable to petitioners. Lester M. Ponder, for the petitioner. Mark E. O'Leary, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies of $35,871.54 and $44,631.99 in petitioners' Federal income taxes for 1972 and 1973, respectively. The sole issue for decision is whether all of the taxable income of North East Optical Service, Inc. , for its fiscal years ended March 31, 1972 and March 31, 1973, is attributable to petitioners and should be included in their gross income for calendar years 1972 and 1973. The resolution of this issue depends upon whether petitioners' minor children were the owners of a portion of the stock in the wholly owned small business corporation for the calendar years 1972 and 1973. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. *468 Martin and Joyce Fundenberger, husband and wife, resided in Indianapolis, Indiana, when they filed their joint Federal income tax returns for calendar years 1972 and 1973 with the Internal Revenue Service Center at Memphis, Tennessee, and when they filed their petition in this case. Petitioners are the natural parents of the following children born on the dates set forth: Name
Birth Date
Mark Fundenberger (Mark)
April 1, 1959
Michael Fundenberger (Michael)
June 6, 1960
Linda Fundenberger (Linda)
February 6, 1962
Martin Fundenberger, Jr. (Martin, Jr.)
December 14, 1965
Maximillian Fundenberger (Maximillian)
March 24, 1968
Marvin Fundenberger (Marvin)
April 15, 1970
Martin Fundenberger (hereinafter petitioner) is a physician specializing in the practice of ophthalmology. In 1967, he began Northeast Optical Company, a sole proprietorship, for dispensing eye glasses on a physician's prescription. On January 26, 1968, petitioner incorporated the Northeast Optical Company under the laws of Indiana as North East Optical Service, Inc. (hereinafter Optical). Optical carried on its business at 2815 East 38th Street, Indianapolis, Indiana, the same building as petitioner's ophthalmology offices. Upon *469 incorporation, petitioner transferred $1,000 cash and inventory valued at $1,359.98 to Optical in consideration for 500 shares of Optical stock which petitioner had issued as gifts from himself to Joyce Fundenberger, individually and as custodian for each of their children, Mark, Michael, Linda, Martin, Jr., and Maximillian. Joyce Fundenberger received 50 shares and the children each received 90 shares. On April 20, 1968, Joyce Fundenberger, on her own behalf and as custodian for each of the children, executed a consent to Optical's election to be taxed as a small business corporation pursuant to sections 1371 through 1379. [1] The election has remained in effect at all times relevant to this case. During the years at issue, petitioner was Optical's president, Joyce Fundenberger was its vice president, and G. William Neal, petitioner's accountant, was its secretary. Petitioner was also chairman of Optical's board of directors comprised of Joyce Fundenberger and G. William Neal. Optical employed at least two dispensing opticians, one of whom was designated as manager. Besides servicing patients, the dispensing *470 opticians purchased inventory and maintained Optical's financial records. Optical also retained the services of petitioner for consulting with respect to proper patient care, the compliance of eye glasses with prescriptions and the handling of customer complaints. Optical paid petitioner consulting fees as follows: Year Ended
Amount
March 31, 1969
$ 0
March 31, 1970
$1,500
March 31, 1971
$6,000
March 31, 1972
$6,500
March 31, 1973
$6,000
On April 15, 1970, a son, Marvin, was born to the Fundenbergers. On April 22, 1970, Optical issued 90 shares of its authorized but unissued stock as a gift from petitioner to Joyce Fundenberger as custodian for Marvin. In consideration for such shares, petitioner executed a promissory note to Optical on or about April 11, 1971. Petitioner paid the principal amount of the note with interest of $381.44 on April 11, 1972. On January 5, 1972, Joyce Fundenberger resigned as custodian for each of her six children and was succeeded by petitioner who served as custodian for the remaining period relevant to this case. In his capacity as custodian, petitioner opened individual checking accounts for each child at the American Fletcher National Bank & Trust Company, *471 Indianapolis, Indiana (hereinafter American Bank), on June 5, 1972. Petitioner deposited $10 into each account and only he as custodian was authorized to draw checks upon these accounts. Prior to this time no custodial savings or checking accounts had been opened for any of the children. On July 27, 1972, petitioner opened custodial savings accounts with the Indianapolis Morris Plan for each of the children and deposited $7,300 in each account. Although a total of $79,800 had been deposited in the six accounts by March 31, 1973, petitioner had withdrawn more than one-half of such total amount by the end of 1973. During the fiscal years ended March 31, 1969 through March 31, 1973, Optical acquired the following parcels of real estate from petitioner and, pursuant thereto, assumed petitioner's mortgage indebtedness in the following amounts: Description of
Mortgage Debt
Purchase Date
Real Estate
Assumed
Price
6-30-68
2815 East 38th Street
$ 0
$22,000
Indianapolis, Indiana
7-08-68
3751 North Rural Street
$ 8,350
$ 8,350
Indianapolis, Indiana
12-31-71
4027 East 62nd Street
$10,638
$21,250
Indianapolis, Indiana
1-01-72
2827 East 38th Street
$ 3,989
$25,000
Indianapolis, Indiana
1-01-72
4001 East 62nd Street
$ 1,300
$ 6,000
Indianapolis, Indiana
Although *472 petitioner personally decided to have Optical purchase the parcel at 2815 East 38th Street, he and Joyce Fundenberger jointly decided to have Optical purchase the other parcels. The purchase prices for the parcels at 2815 and 2827 East 38th Street were determined by petitioner's accountant, G. William Neal, based upon his inquiry of sales of adjacent comparable properties. The purchase prices of the parcels at 4001 and 4027 East 62nd Street were based on the appraisals of two qualified Indianapolis realtors. On July 1, 1968, petitioner and Optical entered a lease agreement with respect to petitioner's ophthalmology offices located at 2815 East 38th Street. Under such lease, petitioner paid rent in the following amounts: Period
Amount
July 1, 1968 to March 31, 1969
$4,000
April 1, 1969 to March 31, 1970
6,200
April 1, 1970 to March 31, 1971
7,200
April 1, 1971 to March 31, 1972
7,200
April 1, 1972 to June 30, 1972
1,800
On June 2, 1972, petitioner formed a limited partnership known as F and C Company (hereinafter F & C) of which he was the general partner. The limited partners were Joyce Fundenberger and petitioner, as trustee of the Peter and Katherine Fundenberger Trust. [2] F & C's articles *473 of Limited Partnership show the following capital contributions and partners' interests in the limited partnership: Capital
Partner's Partner
Contribution
Interest
Petitioner
$26.00
26%
Joyce Fundenberger
25.00
25%
Petitioner, as trustee of the
49.00
49%
Peter and Katherine Fundenberger Trust
F & C was formed for the purpose of acquiring, developing and managing real estate including but not limited to the construction of improvements thereon, the leasing thereof, and the conduct of all lawful business. During 1972 and 1973, F & C had taxable income of $4,252.93 and $5,344.74. In 1973 F & C made the following distributions: Partner
Amount
Petitioner
$1,056.76
Joyce Fundenberger
1,038.23
Petitioner, as trustee of the
2,057.94
Peter and Katherine Fundenberger Trust
On June 7, 1972, F & C purchased five parcels *474 of real estate from Optical for $89,465.71, consisting of $73,964.68 cash, improvements of $811.71 and the assumption of mortgage indebtedness totaling $14,689.32. Such parcels and their purchase prices were as follows: Description of
Purchase Real Estate
Price
2815 East 38th Street
$26,068.00
Indianapolis, Indiana
3751 North Rural Street
9,808.29
Indianapolis, Indiana
4027 East 62nd Street
22,589.42
Indianapolis, Indiana
2827 East 38th Street
25,000.00
Indianapolis, Indiana
4001 East 62nd Street
6,000.00
Indianapolis, Indiana F & C borrowed the $73,964.68 cash for purchasing Optical's real estate from petitioner who, in consideration therefor, received an unsecured promissory note. The purchase prices of the parcels at 4027 East 62nd Street and 4001 East 62nd Street were determined from appraisals made by two qualified Indianapolis realtors. The purchase prices of the other three parcels were set at Optical's adjusted bases in such parcels. Also, on June 7, 1972, F & C purchased from petitioner his personal residence located at 4141 East 62nd Street, Indianapolis, Indiana, for $92,827.42 and a parcel of real estate located at 421 South Illinois Street, Indianaplois, Indiana, for $11,172.58. The *475 purchase prices of both properties were set at petitioner's bases in the properties. F & C paid petitioner $25,000 as a down payment for the properties. Subsequent to the sale, petitioner continued residing at 4141 East 62nd Street and during 1972 and 1973 paid F & C $250 monthly rent. On the same date F & C acquired the real estate described above, petitioner, as general partner of F & C, executed a real estate mortgage on behalf of F & C to Joyce Fundenberger and to himself as custodian for each of the six children holding Optical stock. The mortgage note, in the amount of $99,000, was secured by the properties Optical had sold to F & C and was made payable in 240 monthly installments of principal and interest at the rate of 6 percent per annum. During 1972 and 1973, F & C made no payments of principal or interest to any of petitioner's six children holdidng Optical stock. On June 8, 1972, Optical issued six checks, each in the amount of $23,805.55, payable to petitioner as custodian for each of his six children in distribution of each child's share of undistributed taxable income. Such checks were deposited in each child's bank account at the American Bank. On the same date *476 as the distribution, petitioner drew a check on the account of each child in the amount of $16,500, for a total of $99,000, each payable to F & C for the mortgage note executed on June 7, 1972. On June 14, 1972, F & C repaid petitioner the $73,964.68 plus interest of $90.86 it had borrowed from his on June 6, 1972. For the fiscal years ended March 31, 1969 through March 31, 1973, the taxable incofme of Optical was as follows: Year Ended
Amount
March 31, 1969
$23,542.36
March 31, 1970
21,795.14
March 31, 1971
48,914.67
March 31, 1972
69,043.00
March 31, 1973
81,056.05 Pursuant to Optical's election to be taxed as a small business corporation, its shareholders filed tax returns for the years 1969 through 1973 reporting their distributive shares of taxable income from Optical as follows: Number of
INCOME Stockholders
Shares
1969
1970
Joyce Fundenberger
50
$2,354.23
$2,179.54
Mark Fundenberger
90
4,237.58
3,923.12
Michael Fundenberger
90
4,237.58
3,923.12
Linda Fundenberger
90
4,237.58
3,923.12
Martin Fundenberger, Jr.
90
4,237.58
3,923.12
Maximilian
Fundenberger
90
4,237.58
3,923.12
Marvin Fundenberger
90
0
0
Total
$23,542.36 [5]
$21,795.14
INCOME Stockholders
1971
1972
1973
Joyce Fundenberger
$4,891.46
$6,654.32 [3] *477 $6,869.17
Mark Fundenberger
7,337.35
9,981.45 [4]
12,364.48
Michael Fundenberger
7,337.35
9,981.45 [4]
12,364.48
Linda Fundenberger
7,337.35
9,981.45 [4]
12,364.48
Martin Fundenberger,
Jr.
7,337.35
9,981.45 [4]
12,364.48
Maximillian
Fundenberger
7,337.35
9,981.45 [4]
12,364.48
Marvin Fundenberger
7,337.35
9,981.45 [4]
12,364.48
Total
$48,914.67 [5]
$66,543.00 [5]
$81,056.05 During the fiscal years ended March 31, 1969 through March 31, 1973, Optical accumulated earnings and made distributions as follows: Distributions
Taxable
To Year Ended
Income
Shareholders
March 31, 1969
$23,542.36
$ 0
March 31, 1970
21,795.14
1,893.25
March 31, 1971
48,914.67
3,859.00
March 31, 1972
69,043.00
6,134.44
March 31, 1973
81,056.05
219,113.92
Distribution
For Officers'
Life
Accumulated
Insurance
Earnings
March 31, 1969
$ 0
$23,542.36
March 31, 1970
0
43,444.25
March 31, 1971
836.00
87,663.92
March 31, 1972
632.00
150,940.48
March 31, 1973
202.00
12,680.61
The following distributions were made by Optical in order to pay the Federal and state income tax liabilities of petitioner's six children: Name
3-31-69
3-31-70
3-31-71
3-31-72
3-31-73
Mark Fundenberger
None
$378.65
$643.16
$1,022.41
$2,225.00
Michael Fundenberger
None
378.65
643.16
1,022.41
2,225.00
Linda Fundenberger
None
378.65
643.16
1,022.41
2,225.00
Martin Fundenberger, Jr
None
378.65
643.16
1,022.41
2,225.00
Maximillian Fundenberger
None
378.65
643.16
1,022.41
2,225.00
Marvin Fundenberger
None
None
643.16
1,022.41
2,225.00
*478 During the fiscal years ended March 31, 1969 through March 31, 1973, petitioner and Joyce Fundenberger decided to make loans to themselves from Optical's profits and accumulated earnings. Although they consulted each other before borrowing any money from Optical, Joyce Fundenberger actually initiated and drafted the notes given for each loan. Through the years, petitioner and Joyce Fundenberger received unsecured loans totaling $76,000 from Optical as follows: Year
Amount
1969
$9,500.00
1970
38,500.00
1971
20,500.00
1972
7,500.00
Total $76,000.00
They made payments of principal on the loans from Optical as follows: Year
Amount
1970
$ 8,000.00
1971
1,500.00
1972
66,500.00 [6]
They paid interest to Optical on the loans as follows: Year
Amount
1969
$ 154.38
1970
1,035.70
1971
3,436.42
1972
1,227.29
Petitioner and Joyce Fundenberger borrowed the money from Optical in order to make payments on the real estate they had acquired. In the notice of deficiency, respondent *479 determined that all of Optical's undistributed taxable income for its fiscal years ended March 31, 1972 and March 31, 1973, was taxable to petitioner and his wife, Joyce Fundenberger, for calendar years 1972 and 1973. ULTIMATE FINDING OF FACT During fiscal years ended March 31, 1972, and March 31, 1973, the ownership of 90 percent of Optical stock by petitioner's children was not bona fide and lacked economic reality. OPINION Optical is a small business corporation engaged in the business of dispensing eye glasses by prescription. Upon incorporation in 1968, 90 percent of Optical's stock was issued as gifts from petitioner to his children. On April 22, 1970, petitioner purchased 90 shares of Optical's authorized but unissued stock for the benefit of his newborn son. The issue for decision is whether all of Optical's taxable income for fiscal years ended March 31, 1972, and March 31, 1973, is attributable to petitioner and should be included in his gross income for calendar years 1972 and 1973 pursuant to section 1373. [7] The resolution of that issue depends upon whether petitioner's six minor children are the true and beneficial owners of Optical's stock during those years rather *480 than mere holders of legal title to such stock. Respondent contends that the transfers of stock were not effective for Federal income tax purposes under the principles stated in section 1.1373-1(a)(2), Income Tax Regs., [8] because the children's ownership of the stock was not bona fide and lacked economic reality. In support of his position, respondent relies on three cases finding intrafamily transfers of stock in small business corporations ineffective for Federal income tax purposes: Beirne v. Commissioner, 52 T.C. 210 (1969); Beirne v. Commissioner, 61 T.C. 268 (1973); Duarte v. Commissioner, 44 T.C. 193 (1965). Petitioner attempts to distinguish these cases by arguing that the children realized economic benefits from their stock ownership and, therefore, should be treated *481 as the true owners of the stock at issue. [9]
Ownership of property for Federal income tax purposes is a question of fact to be determined from all the facts and circumstances. Schoenberg v. Commissioner, 302 F. 2d 416 (8th Cir. 1962); Snyder v. Commissioner, 66 T.C. 785 (1976). In determining the true owner of corporate stock, beneficial ownership as opposed to mere legal title is decisive. Hook v. Commissioner, 58 T.C. 267 (1972); Kean v. Commissioner, 51 T.C. 337 (1968). Beneficial ownership is marked by command over property or enjoyment of its economic benefits. Anderson v. Commissioner, 164 F. 2d 870, 873 (7th Cir. 1947), *482 affg. 5 T.C. 443 (1945). In ascertaining beneficial ownership, intrafamily transactions are subject to special scrutiny for determining whether they are economically real. Fitz Gibbon v. Commissioner, 19 T.C. 78, 84 (1952). The validity of a transaction under state law is not conclusive for the purpose of Federal taxation. Commissioner v. Tower, 327 U.S. 280 (1946). The substance of the transaction, rather than its form, is determinative of tax consequences. Commissioner v. P.G. Lake, Inc., 356 U.S. 260 (1958); Commissioner v. Court Holding Co., 324 U.S. 331 (1945). On five prior occasions this Court has reviewed situations somewhat similar to the instant case. See Beirne v. Commissioner, supra; Beirne v. Commissioner, supra; Duarte v. Commissioner, supra.[10] In these cases we relied on the following four factors for determining whether children, who had received stock in a small business corporation from their parents, beneficially owned such stock so as to be taxed on their distributive shares of income from such corporation: (1) whether the parent who is designated as custodian acted as such in representing the interest of the children; (2) whether the parents exercised complete *483 dominion over the transferred stock; (3) whether the parents retained economic enjoyment of the stock; (4) whether the parents dealt at arm's length with the corporation and their children in obtaining loans and paying them back. In applying the above factors to the instant case, we must conclude that the ownership of the 90 percent of Optical stock by petitioner's six children was not bona fide and lacked economic reality during the years at issue. Therefore, the children's distributive shares of income from Optical for fiscal years ending March 31, 1972, and March 31, 1973, are taxable to petitioner. Petitioner's wife, Joyce Fundenberger, served as custodian of the children's interests in Optical from its incorporation through January 5, 1972, when she was succeeded by petitioner. During her term no custodial checking or savings accounts were opened on behalf of the children, nor did Optical make any distributions from its current or retained earnings except for the payment of the children's Federal and state income tax liabilities. She initiated the making of substantial *484 unsecured loans by the corporation to petitioner and herself and permitted the children's proportional ownership of Optical to be reduced by permitting petitioner to give their newborn son, Marvin, 90 shares of Optical stock. Her custodianship also conflicted with her shareholder status in Optical from which she borrowed substantial amounts of money. In sum, when these actions are viewed in the aggregate, we are not convinced Joyce Fundenberger, as custodian, fulfilled her duties or acted responsibly in representing the interest of the children. As for petitioner, Joyce Fundenberger's successor, his actions while custodian were even less responsible. During his term Optical again did not make any distributions to the children from its current or retained earnings other than for payment of the children's tax liabilities until petitioner formed the F & C partnership. Petitioner than had F & C borrow the earnings Optical had distributed to the children so that F & C could repay him the cash it had borrowed to purchase the real estate from Optical. Only at the time of that distribution by Optical did petitioner open custodial checking accounts for the children which enabled him to *485 obtain the funds F & C needed. Moreover, when F & C failed to make installments on the mortgage note executed in consideration for the loans from the children, petitioner never attempted to enforce the right to payment on behalf of the children. Petitioner also failed to explain the whereabouts of the funds he withdrew from the Indianapolis Morris Plan which had been in the names of the children. Furthermore, we believe petitioner exercised nearly complete control of every important aspect of Optical and continued operating its business as if still a sole proprietorship. He had Optical issue authorized but unissued stock to his newborn son and purchase the real estate he and Joyce Fundenberger had previously acquired and made payments on with the help of loans from Optical's current and retained earnings. After forming F & C, he had F & C purchase from Optical the same real estate Optical had acquired from him. The purchase prices for a few of the parcels of real estate acquired in separate transactions by both Optical and F & C were determined not by the fair market value of the parcels at the time of sale but by the seller's bases in such parcels at that time. Petitioner also *486 derived substantial economic benefit from Optical in spite of the purported ownership of Optical's stock by his children. From 1969 through 1972, petitioner obtained a substantial portion of Optical's current and retained earnings by executing unsecured notes in order to make payments on real estate he and Joyce Fundenberger had acquired. Thereafter, he had Optical purchase that real estate and assume the mortgage indebtedness on it.The elaborate plan devised by petitioner involving the fomation of the F & C partnership, F & C borrowing cash from him to purchase Optical's real estate, Optical making a distribution to the children after the opened checking accounts for the children only a few days prior to the distribution, and F & C borrowing such distributions from the children in consideration for executing a mortgage note, ultimately benefited him as the general partner of F & C. Optical's first distribution to its shareholders for reasons other than for the payment of taxes was funneled to F & C to be utilized by petitioner for his personal desires and plans. Therefore, we find petitioner continued to retain the enjoyment of the economic benefits of the ownership of Optical *487 during the years at issue. Finally, petitioner's dealings with Optical were not at arm's length. The loans he and Joyce Fundenberger obtained from Optical to make payments on their real estate were not secured by either real or personal property. No periodic payments on the loans from Optical were required; petitioner made irregular payments in varying amounts. Indirectly these loans may have produced income for petitioner's children, but the conditions on the loans certainly were nothing like those which would have been imposed had petitioner borrowed from a commercial financial institution. Moreover, F & C never made payments on its mortgage note to petitioner's children despite having made distributions to petitioner and the limited partners in 1973. Furthermore, the promissory note in consideration for the Optical stock received by petitioner's newborn son on April 22, 1970, was not executed prior to April 19, 1971. Although not fatal in itself, this is another indication of petitioner's failure to deal with Optical at arm's length. Petitioner argues that Optical's failure to make distributions prior to June 8, 1972, other than for the payment of the children's tax liabilities *488 does not in itself show that the children were deprived of the economic enjoyment of the benefits of owning the Optical stock.While we agree, we cannot ignore that Optical's first distribution to each of the children for reasons other than tax purposes was made at the time petitioner needed cash to put F & C into operation. Moreover, though the failure to establish bank accounts on behalf of the children prior to such distribution does not in itself indicate the children's ownership was not bona fide, it does suggest not only a breach of fiduciary duties but also the manipulation of Optical's distributions and the opening of the children's accounts to petitioner's advantage. We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The Peter and Katherine Fundenberger Trust was created also on June 2, 1972. The grantor was petitioner's mother, Katherine Fundenberger, who transferred to the trust a promissory note in the amount of $12,000 payable to her by petitioner. Petitioner served as the trustee of the trust which provided for the creation of seven separate trust funds primarily for the benefit of petitioner's children.↩
5. We note a discrepancy between the actual totals of the distributive shares for 1969, 1971 and 1972, and the totals which were stipulated by the parties. Since the actual totals have no material effect on this case, and the record does not indicate how the discrepancy arose, we have followed the stipulation in making our findings.↩
3. Petitioners concede that Joyce Fundenberger should have reported $6,866.16. 4. Petitioners concede that Mark, Linda, Martin, Jr., Maximillian, and Marvin should have reported $10,531.98 each. ↩
6. This amount included the transfer of real estate located at 4027 East 62nd Street, 4001 East 62nd Street and 2827 East 38th Street. Pursuant to these transfers, Optical assumed mortgage liabilities totaling $15,927 on the three parcels of real estate.↩
7. In their briefs, both parties addressed the issue of whether petitioner could invoke the attorney-client privilege in objecting to the admissibility of a letter to petitioner from his attorney which respondent offered at trial. We found it unnecessary to consider the letter respondent offered in view of the balance of the record in this case. Therefore, the issue of attorney-client privilege has become moot.↩
8. Section 1.1373-1(a)(2), Income Tax Regs.↩, provides, in part, that: (2) * * * [a] donee or purchaser of stock in the corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction and the donee or purchaser is the real owner of such stock. The circumstances not only as of the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides of the transfer. Transactions between members of a family will be closely scrutinized. 9. See Kirkpatrick v. Commissioner, T.C. Memo. 1977-281↩.
10. See also Speca v. Commissioner, T.C. Memo. 1979-120; Kirkpatrick v. Commissioner, T.C. Memo. 1977-281↩.